NOTICE
Decision filed 04/13/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250952-U

NO. 5-25-0952

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| SCOTT A. GUTHRIE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 21-F-109 |
| | ) | |
| MARY RODGERS, | ) | Honorable |
| | ) | Nicolas J. Boileau, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices McHaney and Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's decision to make the petitioner the primary parent of the two minor children and to allocate all significant decision-making authority to the petitioner was not against the manifest weight of the evidence. Because we find that the court balanced all relevant statutory factors and rendered a decision in accordance with the best interests of the children, the judgment of the circuit court is affirmed.

¶ 2    The respondent, Mary Rodgers (Mother), appeals *pro se* from the order of the Vermilion County circuit court entering a final parenting plan regarding the parties' two minor children, allocating all significant decision-making responsibility over the minors to the petitioner, Scott A. Guthrie (Father), and naming Father the primary parent. On appeal, she challenges the circuit court's consideration of the evidence presented at the allocation hearing, and alleges that the court

1

and the guardian *ad litem* (GAL) were biased against her. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                              I. BACKGROUND

¶ 4    On July 30, 2021, Father filed a petition to determine the existence of a parent-child relationship between himself and two minor children, J.D.G. and A.S.G. In his petition, Father identified himself and Mother as the minors' biological parents. He alleged that he was willing and able to care for the minors and provide for all of their needs. In addition to asking the circuit court for a declaration of a parent-child relationship, Father requested that he be awarded the majority of parenting time and sole decision-making responsibility over the minors, subject to reasonable parenting time with Mother.

¶ 5    On the same date, Father filed an emergency petition for temporary relief, requesting an order awarding him temporary majority parenting time and sole decision-making responsibility over the minors. In his emergency petition, Father listed several alleged examples of Mother endangering the minors, including (1) being charged with operating a vehicle while intoxicated and endangering passengers less than 18 years of age, whom Father believed to be the two minors; (2) facing additional charges of reckless driving and operating a vehicle under the influence of a controlled substance in other cases; (3) being a party to multiple orders of protection involving her former boyfriend, who also had a criminal history; (4) taking one of the minors to the emergency room to receive staples in his head, an injury that Father believed was caused by Mother's current boyfriend striking the child; (5) admitting to allowing one of the minors, who was five years old at the time, to be on the roof of a house while her friends were doing roofing work, despite being previously warned against this by a family services worker; and (6) having a pending Department of Children and Family Services (DCFS) case against her in Indiana, which required her to place

2

the minors in the care of others. Regarding the last allegation, Father stated that Mother placed the minors with other family members. He argued that he was willing and able to care for the minors, and that they should be placed with him instead.

¶ 6 On August 26, 2021, the circuit court entered an agreed order regarding parentage, which stated that the parties agreed that Father was the minors' natural father. The court entered a judgment of paternity to that effect, and appointed a GAL for the minors. On December 1, 2021, the circuit court entered an order granting Father's emergency petition. The court awarded Father temporary majority parenting time, ordered that Father enroll the older child in school, and reserved the matter of allocating parenting time between Father and Mother for a later hearing.

¶ 7 On February 25, 2022, the circuit court entered an order approving the parties' partial joint temporary parenting plan. Mother's counsel filed a motion to withdraw on August 24, 2022, and Mother filed a consent for withdrawal the same day. The circuit court granted the motion on August 31, 2022, and Mother proceeded *pro se* in this matter.

¶ 8 Father filed a petition for a finding of indirect civil contempt against Mother on March 17, 2023, alleging that she violated the temporary parenting plan by keeping the minors with her during Father's parenting time and refusing him access to them. During this time, the minors were also absent from school. Following a hearing, the circuit court found Mother to be in indirect civil contempt and ordered her to transport the minors to Father. Mother failed to comply with the order, and the circuit court authorized of a body attachment on March 27, 2023. Mother was taken into custody shortly after. On April 5, 2023, the circuit court entered an order finding that the minors were at the home of a third party and had not been attending school. The court ordered law enforcement to return the minors to Father, and allowed Mother to be released from custody once the minors were with Father.

3

¶ 9       Father filed a petition to modify the circuit court's February 25, 2022, order for temporary relief on April 11, 2023. In his petition, he recounted Mother's efforts to keep the minors from him, including refusing to cooperate with law enforcement and abide by the court's orders. Father asked the court to reserve parenting time between Mother and the minors, or, in the alternative, to require that her parenting time be supervised. In support of his petition, Father attached affidavits from himself and multiple police officers involved in carrying out the circuit court's aforementioned orders. Following a hearing, the circuit court ordered that Mother's parenting time be restricted and supervised, with the parties to agree on a list of individuals who could provide supervision on April 18, 2023.

¶ 10      The circuit court entered a new temporary order allocating the parties' parenting time and allowing Mother's parenting time to be unsupervised on September 29, 2023. Father filed a proposed parenting plan on June 27, 2024. The proposal listed Father's home as the minors' primary residence, gave Father majority parenting time, and set Mother's parenting time to every other weekend and certain holidays. Significant decisions—those pertaining to the minors' education, health, religion, and extracurriculars—were to be made jointly by the parties, with Father having the final determination if the parties were unable to agree.

¶ 11      Mother filed a letter with the circuit court on November 15, 2024, asking for full parenting time. She argued that she loved her children, that she owned multiple properties and Father owned none, that Father lived with his disabled mother, and that Father could not prove his income. She also included statements from her four other children[1] that they missed their brothers and wanted them back home with them. She further claimed that she would ask Father for the minors and he would refuse her, telling her that "this is ordered" and it was not her time to have them.

---

[1]Father is not the biological father of these children.

4

¶ 12    During a hearing on January 22, 2025, the GAL provided the circuit court with an update to the report she had filed in May 2022. She informed the court that she agreed with Father's proposal that he receive majority parenting time and that the minors' "home base" for the purposes of school attendance be Father's home. She also agreed that it would be appropriate for Mother to have parenting time on alternating weekends. The GAL further reported that Father should have all decision-making authority, but that he should inform Mother and let her be as involved as possible in the process.

¶ 13    The GAL testified that she had met with each party and with the minors, and from her interviews and home visits, she believed that Father's home provided a stable environment for the minors. Father's mother lived with him, and she assisted in caring for the minors. The GAL also opined that, despite being kept out of their lives for some time, Father's relationship with his sons was now growing, and he was progressing in his role as a parent. He had previously been on a "downward spiral" due to drug addiction, but the GAL testified that he had maintained his sobriety for over four and a half years, with no indication that he had ever slipped up or had any issues.

¶ 14    The GAL also testified that the minors appeared to love Mother, because she was "fun" and they had more freedom at her house. The GAL described Mother's home as "chaotic," and very small for the approximately seven people living there, not including the minors. The GAL believed that an eighth person, Mother's current boyfriend, also lived there, although Mother had denied this. The GAL also testified that Mother had not been truthful to her regarding her financial issues with the home. The GAL discovered that Mother had three years of back taxes and was at risk of losing the home. The stairs inside the home were also unsafe.

¶ 15    While the GAL believed Mother was trying to provide for her children the best she could, she failed to produce any proof of income. Mother also had a pending misdemeanor charge for

violating an order of protection filed by a DCFS employee, as well as another pending misdemeanor charge for neglect of the horses she had at a previous address. While Mother had had drug problems in the past, she appeared to be maintaining sobriety at the moment. The GAL did not believe that Mother required supervision during her parenting time, although she should be closely monitored, as her "life changes quite a bit."

¶ 16    On February 18, 2025, Mother filed a motion seeking to call to the court's attention alleged "lies the GAL has said in [her] court report," and asking the court to strike the GAL's report. Following a hearing, the circuit court denied the motion on March 18, 2025. A final hearing in this matter took place across four days on March 21, 2025, June 16, 2025, July 25, 2025, and September 2, 2025.[2] Between hearing dates, on July 23, 2025, Mother filed her proposed parenting plan, asking for both parents to share significant decision-making authority over the minors and increased parenting time for herself.

¶ 17    After hearing the parties' arguments and testimony, as well as the testimony of their respective witnesses, the circuit court delivered its ruling at a hearing on November 17, 2025, and entered a written order on November 24, 2025. The circuit court ruled that its temporary order of February 25, 2022, "wherein the minor children were placed with their father *** and he was named the primary parent and given all decision-making authority, is made permanent." The court further found by a preponderance of the evidence that it was in the minors' best interests for Father to have majority parenting time, be the primary parent for purposes of school enrollment, and to have significant decision-making authority regarding the minors' medical, religious, educational, and extracurricular needs. The circuit court's order also incorporated by reference a final parenting plan, which included many of the same provisions as Father's previous proposed plan. The final

---

[2]The record on appeal does not include transcripts or bystander's reports from any of these dates.

plan increased Mother's parenting time from the proposed plan, notably to include one after-school overnight stay on weekdays, in addition to every other weekend.

¶ 18    Mother filed a timely notice of appeal from this order, which was expedited pursuant to Illinois Supreme Court Rule 311(a) (eff. July 1, 2018).

¶ 19                                II. ANALYSIS

¶ 20    On appeal, Mother argues that the circuit court erred by awarding Father majority parenting time and significant decision-making authority and making him the primary parent because the court did not properly consider the evidence. She contends that she presented evidence that the court overlooked, which showed that she is able to provide for the minors and that she cares for them very much. She provides several unsupported examples of the alleged evidence that favors her and/or disfavors Father. Similarly, Mother makes unsupported and unspecific allegations of bias against her by the circuit court and the GAL. Father submitted a notice in lieu of a response, stating that he chose not to file an appellee brief.

¶ 21    Section 602.5 of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that the circuit court "shall allocate decision-making responsibilities according to the child's best interests." 750 ILCS 5/602.5(a) (West 2024). Likewise, our supreme court has long emphasized that "the best interests of the child is the 'guiding star' by which all matters affecting children must be decided." *In re Parentage of J.W.*, 2013 IL 114817, ¶ 41. The allocation of decision-making authority is within the sound discretion of the circuit court. *Sadler v. Pulliam*, 2022 IL App (5th) 220213, ¶ 42.

¶ 22    The Act further provides that when the circuit court determines the child's best interests in order to allocate parental decision-making responsibilities, the court must consider all relevant factors, including:

7

"(1) the wishes of the child, taking into account the child's maturity and ability to express reasoned and independent preferences as to decision-making;

(2) the child's adjustment to his or her home, school, and community;

(3) the mental and physical health of all individuals involved;

(4) the ability of the parents to cooperate to make decisions, or the level of conflict between the parties that may affect their ability to share decision-making;

(5) the level of each parent's participation in past significant decision-making with respect to the child;

(6) any prior agreement or course of conduct between the parents relating to decision-making with respect to the child;

(7) the wishes of the parents;

(8) the child's needs;

(9) the distance between the parents' residences, the cost and difficulty of transporting the child, each parent's and the child's daily schedules, and the ability of the parents to cooperate in the arrangement;

(10) whether a restriction on decision-making is appropriate under Section 603.10;

(11) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child;

(12) the physical violence or threat of physical violence by the child's parent directed against the child;

(13) the occurrence of abuse against the child or other member of the child's household;

(14) whether one of the parents is a sex offender, and if so, the exact nature of the offense and what, if any, treatment in which the parent has successfully participated; and

(15) any other factor that the court expressly finds to be relevant." 750 ILCS 5/602.5(c) (West 2024).

¶ 23    In child custody matters, "there is a strong and compelling presumption in favor of the result reached by the trial court because it is in a superior position to evaluate the evidence and determine the best interests of the child." *In re Marriage of Agers*, 2013 IL App (5th) 120375,

¶ 25. We will not overturn the circuit court's decision "unless the court abused its considerable discretion or its decision is against the manifest weight of the evidence." *Sadler*, 2022 IL App (5th) 220213, ¶ 42. A decision is against the manifest weight of the evidence where the opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Young v. Herman*, 2018 IL App (4th) 170001, ¶ 56.

¶ 24 We initially note that the record on appeal does not include any transcripts of the four-day-long final hearing, nor of any other hearing aside from the January 22, 2025, hearing on the GAL's report. The issues Mother raises on appeal center on the evidence and argument presented during the final hearing, as well as any findings the circuit court made at the hearing that explain its November 17, 2025, order.

¶ 25 It is the appellant's duty to provide a sufficiently complete record of the lower court proceedings to support the claims on appeal. *Midstate Siding & Window Co. v. Rogers*, 204 Ill. 2d 314, 318-19 (2003). If the relevant proceedings were not recorded and no transcript exists, the appellant is obligated to file a bystander's report or an agreed statement of facts. *Id.*; Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017). In the absence of a sufficiently complete record on appeal, "the reviewing court will presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. [Citations.] The court will resolve any doubts arising from the incompleteness of the record against the appellant." *Rogers*, 204 Ill. 2d at 319; *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Furthermore, Mother is not entitled to a more lenient standard due to her *pro se* status and must abide by the same rules as an appellant who is represented by counsel. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78.

¶ 26 Our decision, therefore, is guided by the GAL's report and the transcript of the hearing on that report, as well as the various filings from the parties and the circuit court's orders over the

course of this case. We also assume that the evidence presented at the final hearing provided the circuit court with a sufficient basis to determine that it was in the minors' best interests to appoint Father as the primary parent and grant him majority parenting time and all decision-making authority. We apply the same assumption to the circuit court's entry of the final parenting plan.

¶ 27 Even without knowing what took place during the hearing dates, we find that the evidence that is present in the record supports our conclusion that the circuit court's ruling was not against the manifest weight of the evidence. This includes Mother's criminal history and involvement with DCFS; the GAL's report and testimony about Mother's and Father's respective living situations and means and abilities to care for the minors; and Mother's actions over the course of the case of denying Father his scheduled parenting time, keeping the minors out of school, and failing to comply with court orders and law enforcement. Mother provides no support for her challenges to the GAL's report and testimony, or for any arguments made by Father in support of his petition. We therefore have no basis upon which to disturb the circuit court's findings of fact.

¶ 28                                    III. CONCLUSION

¶ 29 For the reasons stated, the circuit court did not err in allocating majority parenting time and all significant decision-making responsibility over the parties' minor children to the petitioner father and naming him the primary parent, nor in entering the final parenting plan. The judgment of the circuit court is affirmed.

¶ 30 Affirmed.

10